René BOULÉ and Claude Boulé, Plaintiffs,

v.

Ingrid HUTTON, Leonard Hutton Galleries, Inc., Mark Khidekel and Regina Khidekel, Defendants.

No. 97 Civ. 144(MGC).

United States District Court,
S.D. New York.

Nov. 8, 2001.

---

442

Gerald A. Rosenberg, Rosenman & Colin LLP, New York City, (Gerald A. Rosenberg) for plaintiffs.

Anastasios Sarikas LLP, Astoria, New York, for Mark and Regina Khidekel, defendants.

Martin R. Gold, Rubinbaum LLP, New York City, for Ingrid Hutton and the Leonard Hutton Galleries, Inc., (Martin R. Gold) defendants.

### MEMORANDUM OPINION

CEDARBAUM, District Judge.

Claude and René Boulé seek relief from a final judgment on grounds of newly discovered evidence. Their motion pursuant to Fed.R.Civ.P. 60(b)(2) to reopen the evidence, in a bench trial that was concluded on October 6, 2000, and in which judgment was entered on March 30, 2001, is denied. The "newly discovered evidence" could have been discovered in time to move for a new trial under Fed.R.Civ.P. 59(b) and the new evidence would not have changed the decision in the case.

### BACKGROUND

Claude and René Boulé are Parisian art collectors and owners of numerous works created circa 1921 by Lazar Khidekel. The Boulés purchased these works between 1984 and 1987, from a private art dealer named Vladimir Tsarenkov. In 1997, they filed a suit against Mark and Regina Khidekel, Lazar's son and daughter-in-law, as well as Ingrid Hutton and the Leonard Hutton Galleries, the art dealer and art gallery that exhibited Mark and Regina's inherited Khidekel collection. Plaintiffs sued pursuant to the Lanham Act, 15 U.S.C. § 1125(a), claiming that defendants had falsely disparaged the authenticity of the Boulés' collection in order to promote the sale of Mark and Regina's collection at the Hutton galleries. The Boulés also raised various pendent state law claims, including violations of the New York General Business Law, product disparagement, defamation, tortious interference with business relationships, common law unfair competition, unjust enrichment, breach of contract, common law fraud, prima facie tort and the tort of "false light." A majority of these claims required plaintiffs to prove that defendants' statements impugning the authenticity of the Boulés' collection were false.

During the bench trial held from September 27 to October 6, 2000, plaintiffs and defendants presented expert testimony regarding the authenticity of the Boulés' collection. On September 28, 2000, plaintiffs' witness, Jean–Claude Marcadé, a French art historian and scholar, testified on cross-examination that he knew Vladimir

Tsarenkov, and that he had seen Tsarenkov at the beginning of June in Moscow.

After considering all of the evidence at trial and weighing the credibility of the witnesses, I concluded that the evidence concerning the authenticity of the Boulés' collection was "in equipoise." *Boulé v. Hutton,* 138 F.Supp.2d 491, 503 (S.D.N.Y. 2001). In explaining this conclusion, I included the following language:

> The Boulés purchased 176 works on paper for cash from Vladimir Tsarenkov, an individual who had initially required the Boulés not to disclose his identity. Plaintiffs have been unable to proffer any further evidence concerning the source or history of their works.... The absence of any provenance does not support authenticity.

*Id.* at 503–504. Since "falsity" was an essential element of plaintiffs' Lanham Act, New York General Business Law, product disparagement and unfair competition claims, I concluded that plaintiffs had not sustained their burden of proving these claims by a preponderance of the evidence. *Id.* at 504.

On October 5, 2001, Plaintiffs sought permission to move, pursuant to Fed. R.Civ.P. 60(b)(2), to reopen the trial for the limited purpose of offering newly discovered evidence. Citing my statement that the evidence of authenticity of the Boulés' collection was "in equipoise," and that the absence of any "provenance" did not support authenticity, plaintiffs represented that they now had newly discovered evidence tracing the chain of custody of their Khidekel collection back to 1969/70.

In her affirmation in support of relief from the judgment, Claude states that a few weeks after the trial ended, she was served with a summons by the French Police in connection with a forfeiture proceeding initiated by Mark Khidekel, requiring her to turn over all her Khidekel works and all the evidence in her possession pertaining to the Khidekels. Remembering that he had testified on cross-examination that he knew of Vladimir Tsarenkov's whereabouts, she contacted Marcadé. Marcadé gave plaintiffs Tsarenkov's Paris address and unlisted telephone number. Claude affirms that she first attempted to contact Tsarenkov in October of 2000, and spoke with him in late 2000. Tsarenkov helped plaintiffs find Michel Wolper, a Russian doctor who had purchased the art works in 1969/70 from a senior Soviet museum official. In this manner, plaintiffs were able to reconstruct the chain of custody of their Khidekel collection back to 1969/70.

The newly discovered evidence plaintiffs seek to introduce consists primarily of affirmations elicited from two intermediate owners of the collection—Tsarenkov and Wolper—regarding the chain of custody of the Boulés' collection. Plaintiffs contend that their diligent post-trial investigation reveals that: (i) not later than 1969/70, the Boulés' art works were in the possession of a distinguished figure in the Russian art world, Alexandre Goubarev; (ii) the art works were purchased in Leningrad in 1969/70 by a then Russian doctor, Michael Wolper, who emigrated to France in the middle 1970s; (iii) in 1979, Goubarev, then Deputy Director of the Russian State Museum in Leningrad, took the works with him to Paris, where he was prominently involved in the path-breaking Paris–Moscow Exhibition; (iv) Goubarev delivered the works to Wolper in Paris in 1979; (v) Wolper thereafter sold the works to a famous art dealer based in Berlin, Natan Federowski; (vi) Federowski consigned the works to Vladimir Tsarenkov, who sold the works to Claude; and (vii) both Wolper and Tsarenkov, who deal in Russian avant garde art, believe the Khidekels in the Boulés' collection to be genuine.

Plaintiffs argue that this evidence establishes that the works in question were in existence in Leningrad in 1969/70, and in the possession of a senior Soviet museum official at a time when Lazar Khidekel was a prominent architect in the Soviet Union, and living in Leningrad. They contend that it "defies credulity" that anyone would have, or could have, forged Khidekel's early student works before 1969 for three reasons. First, as the evidence presented at trial established, Lazar's Suprematist works had never been exhibited, so that no one other than Khidekel's own family members would have had the models on which to base their imitations. Second, in 1969/70, Lazar was still alive, so that the forger would have run a grave risk of being discovered by Lazar and prosecuted by the Soviet authorities. Finally, there was no incentive to create forgeries of Khidekel's works in 1969/70, when Lazar was unknown in the West; his work could not have been openly displayed in Russia; and there was virtually no market for his art.

Plaintiffs also proffer as newly discovered evidence the complaint in another Lanham Act case pending against defendants Ingrid Hutton and the Leonard Hutton Galleries, *Galerie Gmursynska v. Hutton*, 01 Civ. 5002 (S.D.N.Y.2001), in which the defendants are charged with falsely disparaging the authenticity of works displayed by the Galerie Gmurzynska in Germany. Plaintiffs note that the complaint in that case contains serious allegations casting doubt on the good faith of Ingrid Hutton and of the two expert witnesses who were defendants' witnesses in *Boulé v. Hutton*. Claude asserts that she was completely unaware of the controversy between Galerie Gmurzynska and the Hutton Gallery until December 2000.

## DISCUSSION

Plaintiffs seek permission to move pursuant to Rule (60)(b)(2) for an order reopening the trial, to receive newly discovered evidence regarding the authenticity of their Khidekel collection. Since plaintiffs are not required to seek permission for such a motion, I shall treat their request as a motion for relief from a final judgment on grounds of newly discovered evidence.

Rule 60(b) provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment ... for the following reasons: ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b).

Fed.R.Civ.P. 60(b). Rule 59(b) provides that "[a]ny motion for a new trial shall be filed no later than 10 days after entry of judgment." Fed.R.Civ.P. 59(b).

In order to prevail on their Rule 60(b)(2) motion, plaintiffs must show that their newly discovered evidence could not have been discovered by the exercise of due diligence in time to move for a new trial within ten days of the judgment date. The judgment date in this case was March 30, 2001, making the effective deadline for filing such a motion April 13, 2001.

Plaintiffs argue that they did not attempt to locate Tsarenkov, or call him as a witness at the trial for two reasons. First, Claude had promised Tsarenkov in 1982 that she would not reveal his identity to anyone, since he could have been prosecuted in the then Soviet Union for the possession, display, sale or removal of 20th Century avant garde art. Second, plaintiffs had no idea of how to trace Tsarenkov through the time of the trial.

Plaintiffs assert that they began to exercise due diligence in uncovering the evi-

dence in October 2000, a few weeks after the trial, when the French Police summoned them, in connection with a forfeiture proceeding initiated by Mark Khidekel. It was then that plaintiffs remembered Marcadé's testimony on cross-examination and contacted him, albeit with some difficulty. Claude affirms that she spoke with Tsarenkov regarding the Khidekels in late 2000, despite difficulties in locating him because of his frequent absence from France and the many occasions on which his cell phone was turned off.

The evidence does not support plaintiffs' contention that by the exercise of due diligence, they could not have discovered the Tsarenkov and Wolper evidence in time to move for a new trial before April 13, 2001. Plaintiffs' witness, Marcadé had revealed as early as September 28th, 2000, on cross-examination, that he had met Tsarenkov in June in Moscow. Neither plaintiffs' counsel nor plaintiffs followed this lead with Marcadé either inside or outside the courtroom.

In her reply affirmation, Claude notes that Marcadé left the courtroom for Boston after he completed his testimony, and that his travel schedule made him hard to reach. But Claude does not represent that she tried to get in touch with Marcadé promptly after he revealed that he knew of Tsarenkov's whereabouts.

Claude states that she spoke with Tsarenkov in late 2000. She also notes that Tsarenkov was in Russia from mid-June to mid-September of 2001, but this does not explain why plaintiffs were not able to obtain his affirmation before April 13, 2001.

Plaintiffs' place great emphasis on my statement that the absence of any "provenance" for the Boulés' collection did not weigh in favor of authenticity. *Boulé*, 138 F.Supp.2d at 503. The word "provenance" as used in my opinion literally means "ori-

gin." The newly discovered evidence that traces the chain of custody back to 1969/70 is interesting, but it does not provide a long enough history to establish the origin of works created circa 1921. Therefore, even if the evidence plaintiffs seek to uncover could not have been discovered in time by the exercise of due diligence, this evidence would not have provided the "provenance" of the works at issue.

Finally, the allegations against defendants Ingrid Hutton and the Hutton Galleries contained in Galerie Gmurzynska's verified complaint are not evidence. In any event, plaintiffs do not explain why they did not raise these allegations before April 13, 2001, since Claude affirms that she became aware of this controversy in December 2000.

### CONCLUSION

For the foregoing reasons, plaintiffs' motion is denied.

SO ORDERED.